IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SYNGENTA LIMITED *et al.*,

Plaintiffs,

v. Civil Action No. 2:24-cv-702

JOHN A. SQUIRES,[1]

Defendant.

**MEMORANDUM OPINION AND ORDER**

Syngenta Limited and Syngenta Participations AG (collectively, "Syngenta") challenge a decision of the United States Patent and Trademark Office ("USPTO") concerning the calculation of the patent term adjustment ("PTA") for United States Patent No. 11,608,323 ("the '323 Patent"). Syngenta also asks this Court to declare that the USPTO's promulgation and application of 37 C.F.R. § 1.704(c)(10) was arbitrary and capricious and contrary to the USPTO's statutory authority. Both parties have moved for summary judgment, and the Court has determined that a hearing is unnecessary to resolve the matter. Dkt. Nos. 43, 47; E.D. Va. Loc. Civ. R. 7(J).

For the reasons set forth below, Syngenta's Motion for Summary Judgment, Dkt. No. 43, is DENIED and Defendant's Motion for Summary Judgment, Dkt. No. 47, is GRANTED.

---

[1] As of the date of this Order, John A. Squires is the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office. Pursuant to Federal Rule of Civil Procedure 52(d), the Court substitutes John A. Squires for Coke Morgan Stewart.

## I. LEGAL BACKGROUND

A patent's term generally begins on the date that the patent is issued and runs for 20 years from the date that the application for the patent was filed. *See* 35 U.S.C. § 154(a)(2). Given that delays in the patent examination process decrease the length of the patent's term, "Congress enacted provisions under which patent applicants may seek [patent terms adjustments ("PTA")] for delays caused by the [USPTO] between the filing and issuance dates of the patent application." *Gilead Scis., Inc. v. Lee*, 778 F.3d 1341, 1344 (Fed. Cir. 2015).

The USPTO may add days of PTA to enlarge the patent term for its own delays, but the USPTO may also reduce the number of PTA days to account for delays caused by the patent applicant. *See* § 154(b)(1), (b)(2)(C). An applicant's PTA "shall be reduced by a period equal to the period of time during which the applicant failed to engage in reasonable efforts to conclude prosecution of the application." § 154(b)(2)(C)(1). Section 154(b)(2)(C)(iii) (the "PTA Statute") enables the Director of the USPTO to "prescribe regulations establishing the circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application."

The USPTO issued regulations in 37 C.F.R. § 1.704 establishing what actions constitute a failure by an applicant to engage in reasonable efforts to conclude the processing or examination of their patent application. One action that counts PTA days against an applicant is the "[s]ubmission of an amendment under § 1.312 or other paper, other than an amendment under § 1.312 or other paper expressly requested by the Office . . . after a notice of allowance has been given or mailed." § 1.704(c)(10) (the "Other Paper Regulation"). The amount of delay is measured "beginning on the day after the date of mailing of the notice of allowance . . . and ending on the date the amendment under § 1.312 or other paper was filed." § 1.704(c)(10). The notice of

allowance is a document that is filed by the USPTO when the patent examiner has determined that a patent is warranted and the document sets the term of the patent that will eventually be issued. *See Califorrniaa v. Hirshfeld*, No. 1:20-cv-985, 2021 WL 6196996, at *1–3 (E.D. Va. Dec. 30, 2021), *aff'd sub nom. Califorrniaa v. Vidal*, No. 2022-1640, 2022 WL 16729429 (Fed. Cir. Nov. 7, 2022). The filing of a notice of allowance generally signals that "examination and prosecution of the patent are complete, unless the examination is reopened on the merits." *Id.*

The USPTO's Manual of Patent Examining Procedure ("MPEP") states that "an amendment under 37 C.F.R. 1.312 or other paper not expressly requested by the Office (i.e., a 'voluntary' amendment . . . or other paper) after the notice of allowance will result in a reduction of patent term adjustment." MPEP § 2732(III)(J) (9th ed. Rev. 1, Jan. 2024). The MPEP provides a non-exhaustive list of "other papers" considered to be a failure to engage in reasonable efforts to engage in processing or examination of an application, such as "drawings" or "a request to change or correct inventorship." *Id.* The MPEP also provides a non-exhaustive list of "other papers" that do not constitute a failure to engage in reasonable efforts to engage in processing or examination of an application, such as "power(s) of attorney," a "change of address," or "status letters." *Id.*

## II. FACTUAL BACKGROUND

The following facts from the Administrative Record ("AR"), Dkt. No. 13, are undisputed except as noted. U.S. Patent Application No. 16/222,900 ("the '900 Application") was filed on December 17, 2018, for an invention called "Herbicidal Compounds." Dkt. No. 48 ¶ 1; AR75–202. The '900 Application also included an Application Data Sheet ("ADS"). Dkt. No. 48 ¶ 1; AR77–87. On the ADS, Syngenta Limited, a United Kingdom corporation, is identified as "Applicant 1" in the section titled "Applicant Information" (AR85), and Syngenta Participations AG, a Swiss corporation, is identified as "Assignee 1" in the section titled "Assignee Information

including Non-Applicant Assignee Information" (AR86).[2] Dkt. No. 48 ¶ 2. The '900 Application was filed as a continuation application of U.S. Patent Application No. 15/027,768, which was originally filed as the Patent Cooperation Treaty United States entry application No. PCT/EP2014/071167. *Id.* ¶ 3. While the ADS did not explicitly list Syngenta Participations AG as an applicant on the '900 Application, the '900 Application contained a declaration that lists both Syngenta Participations AG and Syngenta Limited as applicants. Dkt. No. 44 ¶ 12; AR203–04.

On November 9, 2022, the USPTO mailed a document titled "Notice of Allowance and Fee(s) Due" for the '900 Application which allowed claims 3–8 and 17–19 to be potentially granted. Dkt. No. 48 ¶ 8. The USPTO then issued a notice on December 2, 2022, that requested legible text for some of the previously allowed claims. Dkt. No. 44 ¶ 16; Dkt. No. 48 ¶ 9. On January 18, 2023, at the same time that a response (AR715–18) was filed to the USPTO's notice requesting legible text, a Corrected ADS was also filed for the '900 Application (AR725–38).[3] Dkt. No. 48 ¶ 10. The Corrected ADS lists Syngenta Limited as "Applicant 1" and Syngenta Participations AG as "Applicant 2." AR733–34. The Corrected ADS also lists Syngenta Participations AG as "Assignee 1" and Syngenta Limited as "Assignee 2." AR734–35.

The '900 Application issued as U.S. Patent No. 11,608,323 ("the '323 Patent") on March 21, 2023. Dkt. No. 48 ¶ 17; AR7. Syngenta Limited and Syngenta Participations AG are both listed

---

[2] Syngenta disputes the USPTO's characterization that the ADS lists Syngenta Limited as the sole Applicant and Syngenta Participations AG as the sole Assignee. Syngenta contends that "[t]he original applicants were Syngenta Limited and Syngenta Participations AG, as reflected in the international PCT Application No. PCT/EP2014/071167 to which the '900 application claims benefit." Dkt. No. 51, at 2. Accordingly, the Court only relies on what is explicitly written on the December 2018 ADS form.

[3] Syngenta disputes that it filed the Corrected ADS "in response to the USPTO's notice," but Syngenta does not dispute that it filed its Corrected ADS on the same day that it filed its response to the notice requesting legible text. Dkt. No. 51, at 2.

as an applicant and assignee for the '323 Patent. Dkt. No. 48 ¶ 17; AR7. The USPTO calculated that the '323 Patent would receive 401 days of PTA. Dkt. No. 44 ¶ 23; AR816. Syngenta filed a petition with the USPTO seeking reconsideration of its PTA calculation. Syngenta argued that it is entitled to 471 days of PTA because the USPTO erroneously attributed 70 days of delay to the applicant for filing the Corrected ADS after the Notice of Allowance was mailed. Dkt. No. 44 ¶¶ 23, 24; AR757–65. The USPTO denied Syngenta's reconsideration request and Syngenta filed a second, more detailed reconsideration request. AR818; AR825–32

In a written decision, the USPTO denied Syngenta's second reconsideration request and upheld its determination to attribute a 70-day PTA reduction to Syngenta for filing the Corrected ADS. Dkt. No. 48 ¶ 23; AR924–33. The USPTO reasoned that although a corrected ADS is not listed in the MPEP as an "other paper" under the Other Paper Regulation that would constitute applicant delay, a corrected ADS "is most closely related to a request to change or correct inventorship, which is considered a 'failure to engage.'" AR927 (citing MPEP § 2732). The USPTO also stated that "a change in the applicant (and assignee) may affect patentability" and "a change in applicant may lead to more examination review [concerning] any non-statutory double patent rejections." AR932.

## III. LEGAL STANDARD

A party may move for summary judgment on a claim or defense, or part of a claim or defense. Fed. R. Civ. P. 56(a). The district court will "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "Normally, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."

*Thompson v. United States*, 119 F. Supp. 3d 462, 467 (E.D. Va. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "However, in a case involving review of a final agency action under the [Administrative Procedure Act ("APA")] the standard set forth in Rule 56(c) does not apply because of the limited role of a court reviewing that administrative record." *Id.* (citation modified) (citation omitted). "In other words, the presence or absence of a genuine dispute of material fact is not in issue, as the facts are all set forth in the administrative record" and therefore "summary judgment serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA." *Hyatt v. U.S. Pat. & Trademark Off.*, 156 F. Supp. 3d 771,780 (E.D. Va. 2015) (citation modified).

"[W]hen an agency exercises discretion granted by a statute, judicial review is typically conducted under the Administrative Procedure Act's deferential arbitrary-and-capricious standard. Under that standard, a court asks not whether it agrees with the agency decision, but rather only whether the agency action was reasonable and reasonably explained." *Seven Cnty. Infra. Coal v. Eagle Cnty.*, 605 U.S. 168, 179–80 (2025). "A court reviewing the agency decision must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Burandt v. Dudas*, 528 F.3d 1329, 1332 (Fed. Cir. 2008) (citation modified). "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Id.* (citation omitted).

When a party alleges that an agency's regulation conflicts with a statute, the APA requires that "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). "A

court may give weight to an agency's authoritative interpretation but ultimately must rule on matters of law." *Molina-Diaz v. Bondi*, 128 F.4th 568, 574–75 (4th Cir. 2025) (citations omitted).

## IV. ANALYSIS

### A. PTA Calculation

Syngenta argues that the USPTO's decision denying Syngenta's petitions for reconsideration of its PTA determination was arbitrary and capricious. Dkt. No. 44, at 16. Syngenta contends that the USPTO should not have classified Syngenta's decision to file the Corrected ADS as a failure to engage in reasonable efforts to conclude the processing or examination of its patent application. *Id.* For the reasons explained below, the Court finds that the USPTO's PTA determination was not arbitrary and capricious, an abuse of discretion, or contrary to law.

#### 1. The USPTO's PTA Decision Was Reasonable

Congress authorized the USPTO to "prescribe regulations establishing the circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application." 35 U.S.C. § 154(b)(2)(C)(iii). The United States Court of Appeals for the Federal Circuit has held that, in authoring the PTA Statute, "Congress intended to sanction not only applicant conduct or behavior that result[s] in actual delay, but also [conduct or behavior] having the potential to result in delay irrespective of whether such delay actually occurred." *Gilead*, 778 F.3d at 1349. In addition, "[a]lthough an applicant's conduct may not actually result in delaying the issuance of *that* applicant's patent, such conduct may have negative externalities for other patent applicants because it could result in delaying the issuance of their patents." *Id.* at 1350 (emphasis in original). As part of that framework, the USPTO promulgated the Other Paper Regulation which specifies that the "[s]ubmission of an amendment under § 1.312 or other paper, other than an amendment under § 1.312 or other paper expressly requested by the Office . . . after

a notice of allowance has been given or mailed" constitutes applicant delay in a PTA calculation. "This subsection was amended in June 2020 to . . . distinguish between after-allowance amendments expressly requested by the [USPTO], and those not." *Califorrniaa v. Vidal*, 2022 WL 16729429, at *1; *see also* 85 Fed. Reg. 36335, 36335 (June 16, 2020).

Here, the USPTO reasonably determined that the 70-day delay between the filing of the notice of allowance and the Corrected ADS constituted applicant delay because the Corrected ADS is a paper that was not expressly requested by the USPTO. The notice of allowance for the '900 Application was mailed on November 9, 2022, and shortly thereafter the USPTO mailed a notice only requesting legible text for two claims of the '900 Application. AR713–14. On the same day that Syngenta filed its response to the USPTO's notice to correct its application papers, Syngenta also filed the Corrected ADS that listed Syngenta Limited and Syngenta Participations AG both as the applicants and assignees. AR734–35. This information differed from what was originally listed on the ADS when the '900 Application was first filed. AR85–86. Notably, Syngenta Participations AG is underlined as Applicant 2 and Syngenta Limited is underlined as Assignee 2 in the Corrected ADS, signaling that this information differs from what was previously filed. *Id.*

Syngenta now contends that the Corrected ADS could not possibly have created a delay at the USPTO because the Corrected ADS merely clarified information that was already before the USPTO from its continuation application paperwork and that the USPTO's systems processed this information automatically. Dkt. No. 44, at 24, 28. But Syngenta's argument tacitly acknowledges that there was an ambiguity—created by Syngenta—that needed to be clarified in the first place.

The original ADS conflicted with other documents in the USPTO's systems and did not accurately reflect what Syngenta intended to convey on the '323 Patent. Syngenta could have correctly identified both applicants and assignees prior to the issuance of the notice of allowance,

yet Syngenta did not correct its application until the examination of its patent was complete.[4] *See Novartis AG v. Lee*, 740 F.3d 593, 602 (Fed. Cir. 2014) ("An examination presumptively ends at allowance, when prosecution is closed and there is no further examination on the merits in the absence of a special reopening." (citation modified)). Even assuming that the USPTO had the relevant information somewhere in its system when it mailed the notice of allowance, Syngenta does not explain why the USPTO unilaterally should have corrected the original ADS on the '900 Application when Syngenta failed to provide a fully accurate application or a timely amendment.

In addition, it is undisputed that Syngenta's belated Corrected ADS was not expressly requested by the USPTO. Under the USPTO's guidance in the MPEP, providing another paper to the USPTO that was not requested by the USPTO after the notice of allowance was mailed "will result in a reduction of patent term adjustment." MPEP § 2732(III)(J); *see also Hyatt v. Dudas*, 492 F.3d 1365, 1369 n.2 (Fed. Cir. 2007) ("Although the MPEP does not have the force of law, the MPEP is made available to the public and describes procedures on which the public can rely." (citation modified)). While there are specific documents listed in the MPEP that could be provided to the USPTO that would not be considered as applicant delay, an updated ADS is not listed as one such document. *See* MPEP § 2732(III)(J). A Corrected ADS is also not listed as an "other paper" that necessarily results in applicant delay, but the MPEP clearly states that an "other paper going beyond what was requested by the Office (i.e., including material not expressly requested by the Office in addition to what was requested by the USPTO) would not be considered 'an amendment under § 1.312 or other paper expressly requested by the Office' under 37 CFR

[4] In its first petition for reconsideration to the USPTO, Syngenta stated that the Corrected ADS was meant to "update[] docketing and communication information in addition to reflecting the Assignee and Applicant info based on the assignment recorded February 25, 2022." AR762. But Syngenta does not explain why it waited nearly one year after the assignment was recorded (and months after allowance) before it provided the Corrected ADS to the USPTO.

1.704(c)(10).” *Id.* Syngenta’s Corrected ADS, which was filed at the same time that it responded to the USPTO’s request for legible text, was not expressly requested by the USPTO following the notice of allowance. Consequently, the delayed filing of the Corrected ADS constitutes a failure to engage in reasonable efforts to conclude prosecution of Syngenta’s application because the document was filed after allowance without being requested by the USPTO. Therefore, the USPTO’s decision to credit this delay to Syngenta is reasonable.

2. The USPTO’s Decision Was Not Based on Erroneous Reasoning

The USPTO provided two additional reasons to find that Syngenta’s filing of the Corrected ADS constituted an after-allowance paper that had the potential to cause delay. First, the USPTO stated that changing who is originally listed as an applicant on a patent application “may affect rejections under 35 U.S.C. § 102” and therefore “a change in the applicant (and assignee) may affect patentability.” AR932. Second, the USPTO reasoned that “a change in applicant may lead to more examination review to ascertain whether any non-statutory double patent rejections that previously could not be made based upon applicant/assignee can now be made based upon the change to applicant.” *Id.*

Syngenta argues that both of the USPTO’s reasons are erroneous and require reversal. *See* Dkt. No. 44, at 24–28. Syngenta contends that delays regarding patentability or double-patenting could not have arisen for the ’900 Application because, for instance, the USPTO already had all of the necessary information to make a patentability determination at the time that the application was initially filed. *Id.*

Syngenta’s argument misses the point. The USPTO does not examine a patentee’s application in a vacuum, but instead “an Examiner is required to review a significant number of applications during a limited period of time.” *Gilead*, 778 F.3d at 1349–50. Because of this, “a

supplemental reply or paper often causes delay not only in processing an examination of the particular applicant's application, but also with the processing and examination of other applications before the examiner." *Id.* at 1350 (citation omitted). "Although an applicant's conduct may not actually result in delaying the issuance of that applicant's patent, such conduct may have negative externalities for other patent applicants because it could result in delaying the issuance of their patents." *Id.* Syngenta's filing of the Corrected ADS could have potentially delayed the USPTO in its examination of other patent applications because the USPTO needed to review the new filing given that it did not expressly request this document.

The USPTO also correctly reasoned that the filing of the Corrected ADS could have caused delay by requiring the USPTO to reexamine the potential non-statutory double-patenting of the '900 Application with other patents or applications.[5] "Double patenting generally prevents a patentee from receiving two patents and extending the term of exclusivity for a single invention." *Takeda Pharm. Co. v. Doll*, 561 F.3d 1372, 1375 (Fed. Cir. 2009). "Some commonality of inventorship or (deemed) ownership must exist between two or more patents or applications before consideration can be given to the issue of double patenting." MPEP § 804. The commonality of inventorship could include two patent applications that "have a common applicant, and/or be commonly assigned/owned." *Id.*

If a new applicant or assignee is added to a patent application, then the USPTO will need to determine whether the newly added party also has other patents or patent applications which could be subject to double-patenting. This review can delay the USPTO's processing of the present application (and potentially other applications) because the USPTO must go back to conduct

[5] The Court will not address the merits of the USPTO's determination that the Corrected ADS could have affected patentability given that the USPTO is correct in finding that an additional assignee could have affected its prior double-patenting analysis.

additional research into the new assignee's or applicant's other patents. Therefore, the USPTO correctly reasoned that a Corrected ADS filed after the issuance of the notice of allowance which adds a new applicant or assignee has the potential to delay the USPTO, and such delay should be attributed to the applicant under the Other Paper Regulation.

3. The USPTO's Decision is Not Contrary to Congress' Intent

Syngenta argues that the USPTO's decision is arbitrary and capricious because the decision is contrary to Congress' intent of the PTA Statute. Dkt. No. 44, at 28–29. According to Syngenta, Congress intended only to attribute delay to applicants who "purposely manipulate the system to delay the issuance of their patents." H.R. Rep. No. 106-287(I) (1999), 1999 WL 569140, at *49 (the "House Report"); *see* Dkt. No. 44, at 28. Syngenta raises a few arguments to contend that the USPTO's decisions were contrary to the legislative intent of the PTA Statute, including that the examples of filings that constituted applicant delay in the MPEP all require a processing fee while a new ADS does not.

At the outset, Syngenta did not raise these arguments concerning Congress' legislative intent to the USPTO in either of its motions to reconsider. *See* AR757–65; AR825–32. Accordingly, Syngenta failed to preserve its legislative intent arguments for review by this Court. *See Nuclear Energy Inst., Inc. v. Env't Prot. Agency*, 373 F.3d 1251, 1297 (D.C. Cir. 2004) ("It is a hard and fast rule of administrative law, rooted in simple fairness, that issues not raised before an agency are waived and will not be considered by a court on review."); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) ("[C]ourts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.").

In any event, Syngenta's arguments concerning Congress' intent are not persuasive given that "the authoritative statement is the statutory text, not the legislative history or any other extrinsic material." *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 568 (2005); *see also Supernus Pharms., Inc. v. Iancu*, 913 F.3d 1351, 1361 (Fed. Cir. 2019) (finding that "the language of [the PTA Statute] itself controls this case and sets an unambiguous rule"). In *Gilead*, the Federal Circuit previously considered the language relied on by Syngenta in the House Report and found that "Congress intended the [USPTO] to employ its expertise in identifying applicant conduct demonstrating a lack of 'reasonable efforts to conclude processing or examination of an application.'" *Gilead*, 778 F.3d at 1349 (quoting § 154(b)(2)(C)(iii)). The court in *Gilead* did not read the PTA Statute to mean that the USPTO can only promulgate regulations that sanction conduct by an applicant who intentionally tried to manipulate the patent system by causing delay—as Syngenta now asks this Court to do. The Court finds this would not be a reasonable interpretation of the PTA Statute.

Instead, the plain text of the PTA Statute authorizes the USPTO to promulgate regulations that reduce PTA due to applicant actions which have the potential to cause delay in the processing of a patent application. By promulgating and implementing regulations which sanction delay regardless of the applicant's intent, the USPTO is following its statutory authorization of the PTA Statute. As discussed in more detail below, the USPTO's actions did not conflict with the text of its enabling statute, and therefore its actions were not arbitrary and capricious.

In conclusion, the USPTO's decision to attribute applicant delay to Syngenta's filing of a Corrected ADS after notice of allowance was not arbitrary and capricious, an abuse of discretion, or otherwise unlawful.

**B. Promulgation and Implementation of the Other Paper Regulation**

Syngenta also raises a facial challenge to the Other Paper Regulation. Syngenta asserts that the USPTO's promulgation and implementation of that rule was arbitrary and capricious and not in accordance with the language or intent of the PTA Statute.[6] The Court addresses each of Syngenta's arguments in turn.

1. The USPTO's Reliance on Informal Guidance Did Not Require Formal Rulemaking

Syngenta argues that the USPTO effectively created a new substantive rule without notice-and-comment by relying on its own informal guidance (such as that in MPEP § 2732) to indicate which "other papers" may or may not constitute applicant delay. Dkt. No. 44, at 30. Syngenta alleges that when the USPTO first promulgated the Other Paper Regulation, it meant that all papers filed after a notice of allowance would constitute applicant delay but then amended the substance of this rule by providing lists of documents (such as in the MPEP) which do and do not constitute applicant delay. *Id.* Moreover, Syngenta contends that the USPTO also engages in *ad hoc*, case-by-case analysis when an applicant submits a paper that is not expressly identified in the USPTO's informal guidance, and that this *ad hoc* determination is contrary to the USPTO's policies and enabling statute. *Id.*; Dkt. No. 51, at 19–21.

Under the APA, a substantive change in a regulation requires the agency to undertake formal notice-and-comment rulemaking where the public is given notice of the proposed change

---

6 The USPTO argues that Syngenta has waived its facial challenge to the promulgation of the Other Paper Regulation because Syngenta did not raise this argument before the agency. Dkt. No. 48, at 25. Similar to the arguments made in Sec.III.A.3, the Court recognizes that Syngenta should have raised these arguments before the USPTO first and having failed to do so, the argument is waived. Nevertheless, the Court will address Syngenta's arguments given this Circuit's preference for adjudicating matters on the merits. *But see Nat'l Wildlife Fed'n v. Env't Prot. Agency*, 286 F.3d 554, 562 (D.C. Cir. 2002) ("Indeed, there is a near absolute bar against raising new issues—factual or legal—on appeal in the administrative context.").

and interested parties have an opportunity to provide information to the agency that the agency must then consider. *See* 5 U.S.C. § 553(b), (c). But when the agency implements "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice" then the agency is not required to follow the processes of formal notice-and-comment rulemaking. *Id.* at (b)(A). The Federal Circuit has stated that "a rule which merely clarifies or explains existing law or regulations is interpretative" while a change in a rule "which affects individual rights and obligations" is substantive. *Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1336 (Fed. Cir. 2008) (citations modified) (quoting *Animal Legal Def. Fund v. Quigg*, 932 F.2d 920, 927 (Fed. Cir. 1991)).

The USPTO engaged in formal notice-and-comment rulemaking when it first promulgated the Other Paper Regulation. *See Changes to Implement Patent Term Adjustment Under Twenty-Year Patent Term*, 65 Fed. Reg. 56366-01 (Sept. 18, 2000). One comment suggested that the USPTO should "review each application on a case-by-case basis to determine a reduction of patent term adjustment is warranted." *Id.* at *56377. In response, the USPTO stated that "promulgating regulations that set forth 'strict examples' of circumstances of when applicant has failed to engage in reasonable efforts to conclude prosecution (or processing or examination) of an application (rather than considering applications on an ad hoc or case-by-case basis) is not only consistent with 35 U.S.C. 154(b)(2)(C), it is what the Office is required to do under 35 U.S.C. 154(b)(2)(C)(iii)." *Id.* at *56378. With regard to the proposed text of the Other Paper Regulation, the USPTO stated that "[t]he submission of amendments (or other papers) after an application is allowed causes substantial interference with the patent issue process." *Id.* at *56373. In line with its responses made during formal rulemaking, the USPTO promulgated the Other Paper Regulation to provide that amendments or other papers filed after the notice of allowance is mailed, except

for those expressly requested by the USPTO, would constitute "a failure of the applicant to engage in reasonable efforts to conclude prosecution or examination of an application." 37 C.F.R. § 1.704(c).

After reviewing applications and applying the Other Paper Regulation in practice, the USPTO clarified that "only certain papers (not all papers), filed after a 'Notice of Allowance' is mailed, cause substantial interference and delay in the patent issue process," and the USPTO then provided a list of papers that it would accept after a notice of allowance is mailed. *Clarification of 37 CFR 1.704(c)(10) - Reduction of Patent Term Adjustment for Certain Types of Papers Filed After a Notice of Allowance has been Mailed*, 1247 Off. Gaz. Pat. Office 111 (May 29, 2001), https://perma.cc/PMB9-7JTK. This non-exhaustive list of "other papers" is published in MPEP § 2732.

Based on the history of the Other Paper Regulation and applicable caselaw, the Court finds that the USPTO's guidance regarding the Other Paper Regulation is interpretive and therefore did not require formal rulemaking. On its face, the Other Paper Regulation prohibits an applicant from submitting any additional papers after the notice of allowance has been mailed (except for additional papers requested by the USPTO). The USPTO then clarified that it would accept certain documents after allowance without attributing delay to the applicant. In doing so, the USPTO has essentially carved out exceptions to the broad rule, rather than establishing new prohibitions to applicants. Generally, "major substantive legal additions to prior regulations" require notice-and-comment rulemaking. *U.S. Telecom Ass'n v. FCC*, 400 F.3d 29, 35 (D.C. Cir. 2005) (citation modified) (citation omitted). Furthermore, a rule is substantive if it "expands the footprint of a regulation by imposing new requirements, rather than simply interpreting the legal norms Congress

or the agency itself has previously created." *Children's Hosp. of the King's Daughters, Inc. v. Azar*, 896 F.3d 615, 620 (4th Cir. 2018) (citation modified) (citation omitted).

So read, the USPTO's guidance in MPEP § 2732 and related documents does not add any new requirements to the Other Paper Regulation. Instead, the guidance affirms that the USPTO will not apply the penalties of the Other Paper Regulation in a narrow set of circumstances and reaffirms that other papers filed after the notice of allowance is mailed will constitute applicant delay. Accordingly, the USPTO's guidance providing its non-exhaustive lists of what other papers would constitute applicant delay is simply an interpretive rule that did not require formal notice-and-comment rulemaking.

The Court also does not find the USPTO has contravened its former position stated during formal rulemaking by engaging in *ad hoc* reasoning. Syngenta contends that the USPTO is now making "other paper" PTA determinations on a case-by-case basis because it compared the delayed update of the applicant and assignee information to the practice of changing inventorship after notice of allowance (which is recognized as applicant delay in the MPEP). Dkt. No. 51, at 19. Syngenta overlooks that the USPTO was responding to Syngenta's own argument in the first petition for reconsideration which stated that "[w]hat is apparent from Applicant Data Sheet changes which will be considered a failure to engage in reasonable efforts . . . is that the changes relate to the substance of the application. This is highlighted by, *e.g.*, a change in inventorship . . . ." AR764. The USPTO addressed this argument but also reasoned that the Corrected ADS is not one of the exceptions to applicant delay recognized by the USPTO's guidance in MPEP § 2732, and that the review of the Corrected ADS had the potential to delay application processing given the potential double-patenting issue raised by adding a new applicant

and assignee to the ADS. Simply put, the USPTO did not engage in *ad hoc* reasoning by engaging with an argument that Syngenta itself had raised.

2. The Other Paper Regulation is Consistent With the PTA Statute

Second, Syngenta argues that the Other Paper Regulation is broader than the PTA Statute's mandate because the regulation attributes applicant delay to all papers that are submitted after a notice of allowance is issued which would necessarily include situations in which an applicant exercised reasonable efforts to prosecute their application but nevertheless had delay attributed to them. Dkt. No. 44, at 32. Syngenta alleges that the USPTO has "informally adopted a framework that has abandoned the 'reasonable efforts' clause [of the PTA Statute] and simply compares how closely related an unlisted paper is to a listed one," and that this allegedly new framework "is unmoored from any articulated standard." Dkt. No. 44, at 33. According to Syngenta, this runs afoul of Congress' direction that the USPTO "prescribe regulations establishing the circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application." 35 U.S.C. § 154(b)(2)(C)(iii).

The Court disagrees. "Congress expressly delegated authority to the [USPTO] by granting authority to 'the Director to prescribe regulations establishing the circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application.'" *Gilead*, 778 F.3d at 1349 (quoting 35 U.S.C. § 154(b)(2)(C)(iii)). "Such broad language demonstrates Congress intended the [USPTO] to employ its expertise in identifying applicant conduct demonstrating a lack of 'reasonable efforts to conclude processing or examination of an application.'" *Id.* (quoting § 154(b)(2)(C)(iii)).

The Other Paper Regulation is consistent with the PTA Statute's broad delegation to make rules that "constitute a failure of an applicant to engage in reasonable efforts to conclude

processing or examination of an application" because—in general—any paper filed after a notice of allowance is mailed that was not expressly requested by the USPTO "causes substantial interference with the patent issue process." 65 Fed. Reg. at *56373. Therefore, when an applicant provides the USPTO with an amendment or other paper after examination of the patent application is complete, the USPTO inevitably could be delayed by reviewing the unrequested submission. In addition, as noted above, the substance of the newly filed paper could affect portions of the application that were already determined during examination, such as whether a newly added applicant or assignee could erroneously be awarded a double-patent.

Syngenta also argues that the promulgation of the Other Paper Regulation is inconsistent with Congress' intent for the PTA Statute, but as noted above, "the language of [the PTA Statute] itself controls this case and sets an unambiguous rule" as opposed to the legislative history. *Supernus*, 913 F.3d at 1361. The USPTO appropriately followed the text of the PTA Statute when making the Other Paper Regulation, and therefore its decisions concerning this rule are not contrary to law, arbitrary and capricious, or an abuse of discretion.

3. The Record Does Not Show that USPTO Inconsistently Applies § 1.704(c)(10)

Finally, Syngenta argues that the USPTO inconsistently applies the Other Paper Regulation to other applications (which are not included in the Administrative Record), and therefore the Court should declare that the USPTO's actions are arbitrary and capricious. A district court's review of an agency's action under the APA should be confined to the Administrative Record that was before the agency. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("In applying [the arbitrary and capricious] standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."). But even based on the actions Syngenta now points to, *see* Dkt. No. 44, at 29–30, the Court could not find that the

USPTO has acted inconsistently with respect to applicants who, like Syngenta, change or add an applicant or assignee after allowance. While the USPTO may apply the Other Paper Regulation not to penalize some after-allowance filings (such as when an applicant changes their address), the Court cannot say that such actions are inconsistent, let alone arbitrary and capricious. Consequently, the Court disagrees with Syngenta and finds that the USPTO acted reasonably in its promulgation and implementation of the Other Paper Regulation and that the USPTO has not run afoul of the PTA Statute.

## V. CONCLUSION

For the reasons stated above, Syngenta's Motion for Summary Judgment, Dkt. No. 43, is DENIED, and the Defendant's Motion for Summary Judgment, Dkt. No. 47, is GRANTED.

The Clerk is DIRECTED to send an electronic copy of this Order to all counsel of record and close this case.

It is so ORDERED.

/s/

Elizabeth W. Hanes
United States District Judge

Norfolk, Virginia
Date: September 10, 2026